**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                           Case No. 10-20257

MELVIN BEASLEY,

    Defendant.
                                               /

**OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTIONS,
ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND
DENYING DEFENDANT'S MOTION TO SUPPRESS, AMENDED MOTION TO
SUPPRESS, AND SECOND AMENDED MOTION TO SUPPRESS**

After Defendant Melvin Beasley was indicted for possessing with intent to distribute cocaine and cocaine base, he filed three motions to suppress evidence seized during a search of his residence on April 23, 2010.[1] The motions were referred to Magistrate Judge Diane K. Vescovo, who, after holding a hearing, issued a report and recommendation ("R&R") advising the court to deny them. Defendant timely objected, and the Government responded. After reviewing the R&R and the parties' briefs, the court concludes that an additional hearing would be neither helpful nor necessary. *See* W.D. Tenn. LR 7.2(d). For the reasons stated below and in the thorough, well-reasoned R&R, the court will overrule Defendant's objections, adopt the R&R, and deny Defendant's motions to suppress.

---

[1]These motions include a motion to suppress filed on December 6, 2011, an amended motion to suppress filed on December 7, 2011, and a second amended motion to suppress filed on January 23, 2012.

## I. BACKGROUND

In the R&R, the Magistrate Judge proposes the following findings of fact, to which Defendant makes no substantive objections[2] and which the court adopts in full:

> In April 2010, officers with Tennessee's 25th Judicial Drug Task Force received information from a confidential source that Beasley was selling crack cocaine from his residence located at 190 Main Street, Lagrange, Tennessee. Officers then utilized the confidential source to make three controlled purchases from the defendant at his residence on April 8, 13, and 19, 2010. The confidential informant obtained 9.7, 22.9, and 11.9 grams of crack cocaine, respectively, from the defendant.
> On April 20, 2010, Task Force Officer Garrison Taylor drafted and submitted an application for a search warrant and an accompanying affidavit in order to search the defendant's residence. In the affidavit, Officer Taylor noted that police officers and a confidential source provided information to the Task Force concerning the defendant's suspected drug trafficking. (Officer Taylor's Aff., Ex. 1.) While Officer Taylor stated that the confidential source was reliable, he did not provide specifics or explain the source's reliability. (*Id.*) Officer Taylor did note, however, that the confidential source was used during a controlled buy in which the confidential source wore an audio listening device and was provided controlled currency to purchase crack cocaine from the defendant.[3] (*Id.*) According to the affidavit, the confidential source went to the defendant's residence at 190 Main St. and exchanged the currency for 9 grams of a substance. (*Id.*) The affidavit further states that the confidential source met with Officer Taylor at a predetermined location near the defendant's residence after the controlled buy. (*Id.*) Officer Taylor testified in his affidavit that the confidential source turned over 9 grams of the substance, which later tested positive for crack cocaine. (*Id.*) The affidavit also states that the officers, as well as the

---

[2] Defendant purports to object to the Magistrate Judge's mention of the fact that police officers used their confidential source to conduct three controlled purchases from Defendant. While Defendant concedes that this information is factually accurate, he argues that it should not have been included in the Magistrate Judge's recitation of the facts because only one of the controlled buys was recounted in the search-warrant affidavit. This objection is not well-taken. The Magistrate Judge accurately presented the information contained in the affidavit—explicitly noting that only one controlled buy was described therein, (*see* R&R 3 n.3, Dkt. # 62)—and did not consider the evidence of the other two controlled buys when evaluating the sufficiency of the affidavit.

[3] Although Officer Taylor testified that the confidential source participated in several controlled buys with the defendant, the affidavit only recounts one transaction.

2

confidential source, reported a large amount of "to and from" traffic from the residence. The affidavit concludes by detailing Officer Taylor's prior training and experience in narcotics trafficking and how this experience and training led him to believe that crack cocaine was being stored and sold at the defendant's residence.[4] (*Id.*)

Based on the affidavit, the Honorable Joseph Walker, Circuit Court Judge for the 25th District of Tennessee issued the search warrant, finding probable cause to believe that officers would find crack cocaine, paraphernalia, drug records, and firearms at the defendant's residence. The property to be searched was the same property described in Officer Taylor's affidavit: "[a] single story residence with white siding, black shudders[sic] and a faded gray roof . . . . positioned at 190 Main St. in Lagrange/Fayette County TN." (Search Warrant, Ex. 1; Officer Taylor's Aff., Ex. 1.) The search warrant also permitted officers to search all other buildings and vehicles found on the defendant's premises. (Search Warrant, Ex. 1.) Officer Taylor testified at the hearing that, although he had no supporting facts in his affidavit demonstrating that drugs were specifically stored in Beasley's shed and vehicle, his experience and expertise as a drug enforcement officer has taught him that drug dealers store drugs practically everywhere on their property.

Three days later, on April 23, 2010, Officer Taylor, accompanied by other law enforcement officers, executed the search warrant at the defendant's residence. The officers seized (1) approximately 70 grams of crack cocaine and 5.8 grams of powder cocaine from a white truck owned by the defendant and parked in a driveway on the premises; (2) sandwich bags, torn baggies with cocaine residue, a clear glass plate with cocaine residue, a digital scale with cocaine residue, and rubber gloves from a shed on the premises; and (3) approximately .06 grams of crack cocaine from a bedroom inside the defendant's residence. (Search Warrant Return, Ex. 1.)

At the hearing, Officer Taylor was also shown six photographs of Beasley's property that displayed the white truck, the shed, and Beasley's residence. While viewing the photographs, Officer Taylor testified that the shed was approximately twenty yards from Beasley's residence, was not locked or set off by any boundaries or fencing, and was close to Beasley's driveway. Office Taylor also testified that Beasley's truck was sitting in the driveway, which was directly adjacent to Beasley's residence.

(R&R 2-6.)

---

[4]According to the search warrant return, the officers also seized fifteen pills from a blue Honda Accord, but the government at the hearing stated that they were not going to introduce the pills as evidence. Therefore, the defendant did not seek to suppress the pills.

3

The Magistrate Judge found unavailing Defendant's arguments for suppressing the evidence recovered from his house, truck, and shed. In her proposed conclusions of law, the Magistrate Judge first determined that the affidavit submitted by Officer Taylor provided probable cause for the issuance of the search warrant: "The facts and circumstances laid out in the affidavit—the confidential tip, which was corroborated by the controlled buy, and the heavy 'to and from' traffic at the defendant's house—collectively raise a fair probability that evidence of drug dealing would be found at the defendant's residence." (*Id.* at 9.) Additionally, the Magistrate Judge decided that the allegations in the affidavit justified the search of Defendant's truck and shed, as both were "within the curtilage of the home and thus were a part of the residence and properly included in the search warrant." (*Id.* at 11.) The Magistrate Judge also dismissed the contention that "the warrant was deficient because it does not mention the items to be seized with particularly." (*Id.*) As for Defendants' assertion that the warrant had become stale in the seventy-two hours between its issuance and execution, the Magistrate Judge concluded that the "delay . . . was reasonable" given that the information presented in the affidavit made it "reasonable to assume that [Defendant's residence] was [his] base of operations for his crack-dealing enterprise." (*Id.* at 12.) Finally, the Magistrate Judge noted that, "[e]ven if the court were to find that the affidavit failed to establish probable cause for the issuance of the warrant, the evidence and items seized would be admissible pursuant to the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984)." (*Id.* at 13.)

4

## II.  STANDARD

The filing of timely objections to an R&R requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673-74 (1980).  This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge, in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately."  *Walters*, 638 F.2d at 950.  This enables the court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Thomas v. Arn,* 474 U.S. 140, 147 (1985).  As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

## III.  DISCUSSION

Defendant raises five objections to the proposed legal conclusions contained in the R&R, essentially renewing all of the arguments made in support of his motions to suppress.  After considering each objection in turn, the court determines that none has merit and will adopt the Magistrate Judge's recommendation to deny Defendant's motions to suppress.

Defendant's objections primarily concern whether there was probable cause to issue the search warrant for Defendant's residence. *See* U.S. Const. amend. IV ("[N]o warrant shall issue but upon probable cause, supported by oath or affirmation."). The affidavit submitted by Officer Taylor describes the facts in support of probable cause as follows:

> Affiant has received information from police officers and a confidential source concerning possible illegal drug activity at 190 Main St. Lagrange TN, due to strange activity and a large number of traffic to and from said residence.
> Acting on the information Affiant began an investigation into the property, which revealed that Melvin Beasley was living at said residence. A further check of Melvin Beasley revieled [sic] that Melvin Beasley is currently on federal probation for distribution of crack and has an extensive federal criminal history. Melvin Beasley began probation on 4/13/2009 and said probation ends in 2012.
> Within the past 72 hours Affiant used a confidential and reliable source to purchase Crack Cocaine from said residence. Affiant met said cs at a location in the City of Moscow, Fayette County TN. Said cs was then equipped with an audio listening device and controlled US currency. Said cs was then made contact with Melvin Beasley, via cell phone, and the two arranged to meet at 190 Main St to conduct a transaction. Said cs then went to 190 Main St. and made contact with a male black Melvin Beasley. Said cs then conducted a transaction in which the controlled US currency was exchanged for Crack Cocaine. Said cs then left and met with Affiant at a predetermined location a short distance from said residence. Said cs then turned over the substance which was positive for Crack Cocaine and weighed approximately 9 grams. Affiant was monitored during said controlled buy.

(Aff. Supp. Search Warrant 2, Dkt. # 43-2.) The affidavit also details Officer Taylor's training and eleven-year experience with drug enforcement investigations, which led him to "believe[] that Crack Cocaine is being packaged, stored and sold from [Defendant's] residence." (*Id.*)

Defendant generally contends that Officer Taylor's affidavit was a "'bare bones' affidavit, . . . which states 'only the affiant's belief that probable cause existed'" and

6

does not provide probable cause to issue a warrant. *See United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000) (quoting *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993)). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir. 2005) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). A probable cause determination is made in light of "the totality of the circumstances," *Illinois v. Gates*, 462 U.S. 213, 230 (1983), and the "standard is a 'practical non-technical conception' that deals with the 'factual and practical considerations of everyday life,'" *Frazier*, 423 F.3d at 531 (quoting *Gates*, 462 U.S. at 231). "When reviewing a magistrate's determination that probable cause existed for the issuance of a search warrant, [a court] must determine, under a totality of the circumstances, whether 'the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Miggins*, 302 F.3d 384, 394 (6th Cir. 2002) (quoting *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000)). A court's review of the sufficiency of the evidence supporting probable cause is "limited to the four corners of the affidavit." *Frazier*, 423 F.3d at 531.

### 1. Description of Items to Be Seized

Defendant first asserts that the search-warrant affidavit was lacking in probable cause because it does not describe the particular items of illicit drug-dealing activities—"like scales, packaged drugs[,] etc."—that officers could be expected to find in Defendant's residence, based upon the observations of the confidential informant. (Def.'s Objections to R&R 4, Dkt. # 63.) The Magistrate Judge interpreted, and

rejected, this argument as a challenge to the specificity with which the warrant itself described the items to be seized.

Although the court understands that Defendant intends to attack the issuing court's probable-cause determination, his contention fairs no better in this arena. It is well established in the Sixth Circuit that evidence suggesting an individual's involvement in drug trafficking provides probable cause to believe that drugs, along with other equipment used in distributing drugs, can be found at that individual's residence—even when no drug trafficking activity was observed there. *See, e.g.*, *Miggins*, 302 F.3d at 393-94. Here, the affidavit not only implies that Defendant was illegally distributing crack cocaine; it implies that he was doing so out of his residence. *See infra* Section III.2. Based upon this information, the issuing court had a substantial basis to conclude that evidence of drug trafficking—including the items delineated in the affidavit and search warrant—could be found at Defendant's residence.[5]

## 2. Reliability of Confidential Source

Defendant next challenges the Magistrate Judge's proposed finding that the search-warrant affidavit contains sufficient information to corroborate the confidential

---

[5]As the Magistrate Judge summarized, the warrant listed the following items to be searched for and seized:

> (1) "Crack Cocaine and any and all paraphernalia related to storage,packaging, sale, distribution and manufacturing of Crack Cocaine"; (2) "Records, computers and computers and computer storage disk[s]" that might contain evidence of drug sales; (3) residency documentation; (4) financial records pertaining to drug proceeds and any items purchased with those proceeds; and (5) any firearms.

(R&R 11 (quoting Search Warrant 1, Dkt. # 43-1; Aff. Supp. Search Warrant 1).)

8

informant's information.  Rather, Defendant maintains, the affidavit does not provide adequate facts to establish the informant's reliability and, without such facts, the affidavit does not establish probable cause for the search.

Where a search-warrant affidavit relies on hearsay information from a confidential informant, "a court must consider the veracity, reliability, and the basis of knowledge for that informant as part of the totality of the circumstances for evaluating the impact of that information."  *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003).  "[A]n affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information."  *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) (citing *Gates*, 462 U.S. at 241-45; *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000)); *see also Frazier*, 423 F.3d at 532 ("[I]n the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration.").

While Defendant is correct that Officer Taylor's affidavit does not include information establishing the confidential source's reliability, it does allege enough facts of police corroboration to allow a finding of probable cause.  The affidavit describes in detail a controlled transaction between Defendant and the confidential source, in which Officer Taylor met the source at a predetermined location and equipped him with controlled currency and an audio listening device.  Thereafter, the informant arranged to meet Defendant at Defendant's residence, and, once the informant had arrived and

9

made contact with Defendant, the informant exchanged the controlled currency for a substance that tested positive for crack cocaine.[6]

The Sixth Circuit has repeatedly held that similar affidavits detailing a single controlled purchase of narcotics adequately corroborate tips from confidential sources regarding illegal drug activity.  *See, e.g.*, *United States v. Jackson*, 470 F.3d 299, 307-08 (6th Cir. 2006); *United States v. Coffee*, 434 F.3d 887, 893-95 (6th Cir. 2006); *see also United States v. Adkins*, 429 F. App'x 471, 479-81 (6th Cir. 2011); *United States v. Smith*, 337 F. App'x 500, 504-05 (6th Cir. 2009); *United States v. Henry*, 299 F. App'x 484, 487-88 (6th Cir. 2008).  This precedent is controlling here.  The controlled buy described in the affidavit, when coupled with the documented observations based upon police surveillance of the residence, provide enough corroboration of the confidential informant's information to uphold the issuing court's probable-cause determination.  *See Jackson*, 470 F.3d at 308 ("[A]lthough details concerning the informant's reliability gleaned from past encounters are lacking, the magistrate's finding of probable cause in this case was based on the affiant's personal knowledge and observations, rather than hearsay of the informant. [The affiant's] corroboration of events that occurred during the

---

[6]Defendant argues that Officer Taylor's description of the controlled buy is deficient because it states merely that the substance obtained from Defendant "was positive for crack cocaine" without detailing the method used to test it.  This argument fails for the reasons noted by the Magistrate Judge.  (*See* R&R 7 n.5.)  It is well established that a presumption of validity applies to the factual averments made in search-warrant affidavits, which a defendant can attack only through allegations, accompanied by an offer of proof, "of deliberate falsehood or of reckless disregard for the truth."  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  Defendant has not made such a showing here, and the issuing court was entitled to rely on Officer Taylor's assertion that the substance obtained by the confidential source from Defendant tested positive for crack cocaine.

controlled buy, as set forth in the affidavit, provide sufficient probable cause to sustain issuance of the search warrant.").

### 3. Staleness of the Warrant

Defendant's third objection concerns the Magistrate Judge's ruling that the information in the affidavit was not stale when it was executed, seventy-two hours after the search warrant was issued. Defendant argues that the facts alleged in the affidavit did not suggest that established and ongoing illegal activity was occurring at Defendant's residence, so the three-day delay in execution—coupled with the fact that the controlled transaction recounted in the affidavit had occurred within an additional seventy-two hours prior to the search warrant's issuance—made the information stale.

"In seeking to establish probable cause to obtain a search warrant, the affidavit may not employ 'stale' information, and whether information is stale depends on the 'inherent nature of the crime.'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). In making a staleness determination, a court must consider factors like "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?)." *Spikes*, 158 F.3d at 923 (citing *Andresen v. State*, 331 A.2d 78, 106 (Md. Ct. App. 1975)). "The passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *United States v. Hython*, 443 F.3d 480, 485 (6th

Cir. 2006) (citing *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001); *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)).

In *Hython*, the Sixth Circuit had occasion to speak on the staleness issue in precisely this context, that is, when considering a challenge to a search warrant issued based upon information that an individual purchased drugs from the defendant's home:

> The crime at issue in this case—the sale of drugs out of a residence—is not inherently ongoing. Rather, it exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den. The inclusion of outdated information has been insufficient to render an entire affidavit stale when the affidavit as a whole establishes that the criminal activity in question is ongoing and continuous, or closer to the "drug den" end of the continuum. In *Greene*, a search was upheld despite the fact that the last of 12 controlled buys took place 23 months prior to the issuance of the warrant. *See* [250 F.3d at 481.] The number of controlled buys, in combination with ongoing observation of the comings and goings at the residence, established probable cause to believe that the residence continued to be an operational base for a drug ring. *See id.* In *Spikes*, although some evidence in the affidavit was over four years old, 158 F.3d at 923, very recent information, coupled with surveillance over a span of years, established probable cause that the home to be searched was the primary source of crack cocaine in the town and that crack was regularly being manufactured on the premises. *See id.*

443 F.3d at 485-86.

The court finds unpersuasive Defendant's attempt to characterize the facts presented in Office Taylor's affidavit as evidence of nothing more than a "one-shot deal" rather than an operation more akin to a "drug den." The affidavit notes that police officers observed "strange activity and a large number of traffic to and from said residence." (Aff. Supp. Search Warrant 2.) This suggests that Defendant had an established practice of dealing drugs out of his home to multiple customers, even if the affidavit does not specifically allege that the confidential informant observed "specific

drug related items" within or on the premises of Defendant's residence. (Def.'s Objections to R&R 8.) Consequently, it is reasonable to conclude that evidence of these illicit activities could still be found at the residence five or six days after the controlled purchase recounted in the affidavit. *See United States v. Moore*, 661 F.3d 309, 313-14 (6th Cir. 2011) (holding "period of less than five days between the CI's information about the presence of drugs and the application for and execution of the warrant does not make the information stale" when "warrant implies that the [searched] apartment is a base of drug trafficking"). Under these circumstances, the delay in the execution and issuance of the search warrant does not make the information contained in the affidavit stale or invalidate the search warrant.

### 4. Search of Defendant's Truck and Shed

Defendant also argues that the Magistrate Judge incorrectly concluded that the search-warrant affidavit provided probable cause to search the shed and the white truck located on Defendant's property, where officers recovered the bulk of the evidence seized in the April 23, 2010 search. Essentially, Defendant contends that the controlled purchase described in the affidavit took place inside of Defendant's residence, and it therefore did not justify the warrant's authorization to search "all outbuildings, outhouses and storage buildings, all vehicles found thereon and all persons named in the warrant and all persons known and unknown who are located on and familiar with the premises." (Search Warrant 1.)

The Magistrate Judge found, and Defendant does not contest, that both the truck and shed were located within the curtilage of Defendant's residence:

> Officer Taylor testified that the shed was located approximately twenty yards from Beasley's residence and was not locked or set off by any boundaries or fencing. Beasley's truck was sitting in the driveway, which was directly adjacent to Beasley's residence. The photographs introduced into evidence corroborated his testimony. Accordingly, the court finds that the truck and shed are within the curtilage of the home and thus were a part of the residence and properly included in the search warrant.

(R&R 10-11.)

Defendant fails to present any legal authority challenging the principle that structures within the curtilage of a property can be included in a search warrant for that property, even when the search-warrant affidavit does not specifically allege that illegal activity occurred in those structures. *See United States v. Bennett*, 170 F.3d 632, 638-39 (6th Cir. 1999) (holding that, when search-warrant affidavit provided probable cause to search the defendant's residence, there was also probable cause to search an outlying shop building, as "the shop building and the residence are sufficiently connected because they are both within the curtilage of the defendant's property").[7] The same is true of vehicles within the curtilage. *See, e.g.*, *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990) (collecting cases in support of proposition that "search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein"). The search of Defendant's truck and shed was consistent with these longstanding and generally accepted rules, and the court sees no reason to depart from them in this case.

---

[7]The lone case Defendant does cite on this issue, *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994), is persuasively distinguished from the instant situation in *Bennett*, 170 F.3d at 638-39.

### 5. Good Faith Exception

Finally, Defendant objects to the Magistrate Judge's determination that, even if the search-warrant affidavit did not establish probable cause for the April 23, 2010 search, the items seized would still be admissible against Defendant under the good-faith exception established in *Leon*, 468 U.S. 897. Under *Leon*, "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" is generally not subject to the exclusionary rule usually applicable to searches that violate the Fourth Amendment. *Id.* at 922. Defendant renews his assertion that Officer Taylor's affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" such that the officers executing the search warrant did not "manifest objective good faith in relying on [it]." *Id.* at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)).

The court has already ruled that the issuing court had a substantial basis for concluding that there was probable cause to search Defendant's residence, and that analysis also satisfies the "less demanding showing" required to establish a police officer's good faith reliance on the search warrant. *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002)). Defendant reiterates his arguments, all considered above, as to why he believes the affidavit did not establish the requisite nexus between the criminal activity described and the place to be searched. However, the controlled purchase described in the affidavit occurred *at Defendant's residence*. As it is hard to imagine a closer connection between the illegal transaction and the searched premises, it is beyond question that the officers executing the warrant in this case could reasonably believe

that it was supported by probable cause. See *United States v. Laughton*, 409 F.3d 744, 749 (6th Cir. 2005) (recounting cases that upheld application of good-faith exception on far lesser showings relating illicit conduct to place searched).

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's objections [Dkt. # 63] are OVERRULED and the Magistrate Judge's report and recommendation [Dkt. # 62] is ADOPTED IN FULL AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Defendant's motion to suppress [Dkt. # 43], amended motion to suppress [Dkt. # 44], and second amended motion to suppress [Dkt. # 51] are DENIED.

     s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  May 3, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 3, 2012, by electronic and/or ordinary mail.

     s/Lisa G. Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522